DAVID D. HULL, Appellant, *v.* JOHN PEER *et al.*, Appellees.

### APPEAL FROM PIKE.

In a bill for the specific performance of a parol agreement for the sale of lands, if the defendant denies the agreement, and does not set up the statute of frauds as a defense, he cannot afterwards insist upon the statute in bar.

In a bill for a specific performance, the complainant need not, at his peril, state the precise amount due. He may state his case most favorably to himself, and if, upon the equities of the case, the court should decree a different amount, he can then conform to its judgment.

A and B executed a note together, with the understanding that A should pay it. The payee insisted that B should appear upon the note as principal, and A as surety. It was held that nevertheless, as between themselves, A was the principal and B the surety, in equity.

In decreeing a specific performance of a parol agreement for the sale of lands, the court will require the complainant to do complete justice, upon the broadest principles of equity, and will not be satisfied with a literal performance of the agreement by him.

ON the 27th day of August, 1855, Billingsby Bowen filed his bill in chancery in the Circuit Court of Pike county, charging that about the year 1850, the complainant and David D. Hull entered into a parol contract, whereby, for the consideration of one hundred and fifty dollars, the said Hull agreed to sell and convey to complainant the east half of the south-east quarter of section twenty-one, township four south, range seven west of the fourth principal meridian; that said Hull was at the time indebted to the school fund of said township in the sum of one hundred dollars, and it was agreed between complainant and said Hull that complainant should assume and pay the said sum of one hundred dollars for said Hull, in part payment of the consideration to be paid for said land; that afterwards, complainant and said Hull executed their note to said township for said sum of one hundred dollars, and being for the same sum of money agreed to be paid by complainant for said Hull to said township; that the agreement between Hull and complainant was, that complainant should pay this note, and that the amount thereof, when paid, should stand as a payment of one hundred dollars on said contract for the land; that no time was fixed by the contract for the land, for the payment of the balance of the consideration to be paid therefor, but that it was agreed between them, that complainant should pay said note to the township when called for, and pay the balance of said purchase money (fifty dollars) whenever thereafter it might suit the convenience of com-

plainant to do so, and that upon payment of such balance and the said school note, said Hull was to execute a deed to him, conveying the title to said land.

Bill avers, that in pursuance of said contract, complainant paid said note to the township, in full, and took up the same; that said note was for the debt of said Hull to the township, and that complainant paid it in pursuance of his agreement to pay the same as part consideration for said land; that after he had paid said note, he notified said Hull thereof, and tendered to him the sum of fifty dollars, the balance of the consideration to be paid for said land, and requested said Hull to execute to him a deed for the land, but that said Hull refused and failed so to do. Complainant then offers to bring said sum of fifty dollars into court, and avers that the same is in court, ready to be delivered to said Hull, and subject to the order of the court.

Bill further charges, that said Hull, in part performance of the contract aforesaid, delivered the possession of said land to complainant, and that complainant has ever since had possession thereof under and in part performance of said contract, and that he is now residing upon said land with his family; that after he had so taken possession of said land, he removed thereon with his family, the land being vacant and unimproved when he so removed upon it; that complainant made valuable and lasting improvements thereon, consisting of a hewed log cabin as a dwelling-house for his family, which they now occupy as such, and by breaking and putting into cultivation forty acres of the land, fencing said forty acres, and digging a well thereon; that said Hull was cognizant of these improvements and made no objection thereto, but encouraged complainant to make the same, and stated to third persons that the land was complainant's; that complainant has been in the uninterrupted possession of said land since contract was made; that he, for a short interval, during a visit to Ohio, rented the same to a tenant, who held and occupied the same until his return, and who paid the rent to complainant without let or hindrance from said Hull; that complainant paid the taxes upon said land, and exercised all other acts of ownership thereon, during said period, without objection or warning from said Hull.

Bill makes Hull defendant thereto, and prays that he be required to answer the same; prays that he be compelled to convey the land to complainant, and for general relief.

The answer of the defendant to the charges in the bill, in respect to the alleged agreement to sell and convey to the complainant the land described, as said agreement is set forth

21

in the bill, wholly denies the same; that respondent never agreed to sell or convey said land to complainant for the sum of one hundred and fifty dollars, or for any other sum as stated in said bill; that respondent never made any other or different agreement with complainant in regard to said land, or any land than as hereafter stated. Answer denies the allegations of the bill, respecting an agreement made between him and complainant, by which, as alleged, complainant was to assume the payment of a promissory note executed by respondent as principal to the school township, for the sum of one hundred dollars, and denies that respondent was to accept the same as part payment of the consideration of said land. Admits that he was indebted to said township in the sum of one hundred dollars, for which he executed his promissory note with security as stated in the bill. Admits that recently, and since a controversy has arisen between him and complainant respecting the land, complainant has, by some arrangement, taken up or paid said note, but that such payment was wholly unauthorized by respondent, and was done without any agreement or understanding with respondent; that respondent was at all times ready and willing to have paid the same whenever demanded of him, and that he had regularly, by himself or his agents, paid the interest thereon from year to year, as the same accrued and was demanded.

Admits tender of $50 to him, and demand of a deed by complainant for the land, and says complainant at the time spoke of a note he had taken up from the township. Admits he refused to make a deed, for the reason that there was no obligation upon him to do so. Admits that complainant went into the possession of a portion of the land described in the bill, about the year 1850, and that complainant at intervals has been in possession of portions thereof since that time, and that complainant has made some improvements upon said land, but not to the extent alleged in said bill; that the circumstances under which complainant went into the possession of said land and made said improvements will be more fully stated by respondent in subsequent portions of his answer. Denies that complainant went into possession of said land as owner, either equitably or legally, or that he made said improvements by virtue of any contract for the purchase of said land, but from other and different considerations from those stated in the bill. States that some of said improvements were made with the consent of respondent, but portions thereof were made without and against his consent, and after a controversy had arisen between him and complainant about the land.

Hull *v.* Peer *et al.*

Respondent states the facts to be as follows, in regard to what had occurred between him and complainant in regard to said land or any land : that complainant was a son-in-law of respondent (his wife having since died); that complainant was a poor man, of but little means or capital other than that with which, from time to time, he had been furnished by respondent; that respondent was desirous of assisting complainant as far as his duty to his own family and his other children would permit; that respondent had purchased the half section of land, of which the land described in the bill formed a part, and complainant was desirous of buying eighty acres of land from respondent, but no particular portion or eighty of said land was designated or agreed for between them ; that respondent, in answer to the proposition of complainant, had informed him that if he (complainant) would give his note to the school treasurer of said township, instead of the note respondent had executed to said township (for one hundred dollars), and would jointly assist respondent in making a stock farm of said half section of land (for which purpose respondent had bought it), by building a house upon it, and residing there for the purpose of boarding respondent's hands whilst they were engaged in improving and taking care of stock, and would pay half the expenses of improving, that respondent would convey eighty acres of said land to complainant, but no particular part of said land was designated as the eighty to be conveyed to complainant; and respondent at the same time further proposed to complainant, that if he (complainant) would not buy the land upon these terms, that if he would help to improve it for the purposes of a stock farm, he should have the use of the land until he was fully paid for his labor and improvements; that these were the only propositions ever made by respondent to complainant in regard to said land ; that complainant did not, at the time said proposals were made or afterwards, accept the same, nor did he in any manner comply with the terms of said proposals, but so far as said complainant afterwards acted under said propositions, by going into possession of a portion of said land and improving the same, it was under the alternative proposition to pay him for his labor and improvements, and not under the proposition to sell him said land. Respondent denies that complainant ever complied with any proposition ever made to him by respondent, for a sale of said land, or any part thereof, to him, and affirms that both complainant and respondent understood that no other contract whatever subsisted between them in regard to the land, than the under-

standing growing out of said proposal by respondent to pay said complainant for the improvements he might make upon said land in the manner before stated, and that complainant, by his declarations and conduct, has since so admitted; that after said proposals had been made, complainant did go upon the land and make some improvements, respondent's teams and hands assisting to a considerable extent. And that after complainant had been upon the land for two or three years, he sold out his improvements to respondent for about the sum of seventy dollars, and left for the State of Ohio, where he remained some time, and then returned to this State; that in the sale of said improvements, complainant had reserved the right of repurchasing them, and of placing himself in his former position towards respondent upon said land. Upon his return to this State, which was in the fall of 1853, complainant manifested no disposition whatever to repurchase said improvements, but, on the contrary, abandoned said land, and cultivated other land; that respondent, regarding the agreement between himself and complainant, in regard to the improvement of said land, as abandoned by complainant and at an end, made other and different arrangements for its improvement, and some time thereafter was surprised by an assertion to some claim, by said complainant, to some part of the land in question; that after some negotiation between respondent and complainant, said complainant then agreed that he would pay back to respondent what respondent had paid him for his improvements, and that then three disinterested persons should be chosen, who should say and determine how long complainant should occupy said land in payment for the improvements he had made upon it; that both parties assented to this proposition, and respondent has ever been ready to comply with this agreement, but complainant, when they met for the purpose of selecting persons to determine this matter, refused to comply with said agreement.

Answer alleges, that the use of the land has been sufficient compensation for all improvements made thereon by complainant.

Answer of respondent sworn to, and replication filed thereto.

Death of complainant suggested, and leave to revive in the name of the heirs.

Decree: That the complainants, within ten days, pay to defendant, or to master for him, the sum of ninety dollars; that upon such payment, defendant execute and deliver to complainants, and Isaac Bowen, and Martha Bowen, a deed

for the land described in the bill, defining the interest to be conveyed to the respective parties, or in default, that the master convey, and decree for costs against defendant.

Defendant appealed, and now assigns for error—

That the court erred in rendering its decree herein for appellees.

That the court erred in decreeing a specific performance of the alleged contract in the bill.

That the court erred in not dismissing the bill of complainants on the hearing, and in not decreeing costs against them.

C. L. HIGBEE, and M. HAY, for Appellant.

W. A. AND J. GRIMSHAW, for Appellees.

CATON, C. J. The bill in this case, is for a specific performance of a parol agreement for the sale of land, for the consideration of one hundred and fifty dollars; and states the mode and terms of payment. It avers possession, improvements, part payment and tender of the balance. The answer, which is sworn to, the oath not having been waived, does not interpose the statute of frauds, but positively denies that any such contract, as is stated in the bill, or any other contract for the sale of the land, was ever made. Here is the great and leading issue, formed by the pleadings, and it requires evidence, equal to the testimony of two witnesses, to overcome this answer. This is upon the ground, that the complainant having required the defendant to answer on oath, has thereby made him a witness in the cause, and his testimony being against the allegations of the bill, it must be neutralized by evidence equivalent to it before he can commence establishing his case, by other and distinct proof.

In this case, it is proved by a cloud of witnesses, that the answer is false, when it denies the existence of any agreement for the sale of this land. There are at least five witnesses, who testify to statements made, repeatedly and at different times, by the defendant, that he had sold the land to complainant, though but two state the price and terms of the sale, as stated in the bill. These are Thomas Orr and Harvey Gallaher, though Fugate and Henry Johnson establish the mode and times of payment, as stated in the bill; but by them it does not appear that the defendant stated the price. Now here is the testimony of all these witnesses, going directly to impeach the truth of the defendant's testimony in his answer. The defendant must be a man, who habitually states the most reckless falsehoods, in his daily intercourse with his neigh-

bors, or his answer is false, when he denies that an agreement for the sale of this land had been made between the parties. We are constrained to regard the answer as untrue, and unworthy of the least credit. It is true that one of the complainant's witnesses is very effectually impeached, in his general reputation, and were he unsupported by other witnesses, we should give little or no heed to his testimony; but the defendant's answer is shown by the other witnesses, and many of them, to be absolutely false, and is entitled to even less credence than the testimony of Gallaher.

The contract then was proved as averred, very clearly and satisfactorily, and so was the payment of the principal, and thirty dollars of the interest of the note; while the proof also shows, that the defendant paid twenty or twenty-five dollars of the interest on the note. There was proof of considerable other dealing between the parties, all having more or less connection with the land contract, and it is not entirely clear how the balance should be struck between them. The complainant averred the tender of fifty dollars to the defendant, before filing his bill, and he proves a tender by one witness of ninety dollars, and by another, he proves that the defendant had admitted a tender of one hundred and ninety dollars. The decree awards to the defendant the ninety dollars tendered, and requires him to convey. But it is objected that the allegations and proofs do not agree, and hence the proof of the tender of ninety dollars or more, is inadmissible, under an averment of a tender of only fifty dollars, stating, also, that that was the amount due the defendant on the purchase of the land. Now, strictly speaking, that was all that was due of the purchase money, under the literal terms of the contract, according to the testimony of Mr. Fugate. He says that Bowen was to substitute a new note, which the treasurer was to accept in place of the one hundred dollar note of Hull's, which he held, and this was to stand as a payment of one hundred dollars of the purchase money, and the proof abundantly shows, that after this, but fifty dollars was due. This was in fact done in a mode which met the concurrence and approbation of Hull. When they met at the treasurer's for the purpose of the substitution, the treasurer objected to taking a note in substitution, with Bowen as nominal principal, because Bowen was already owing the school fund seventy-five dollars, and hence it was necessary that some one else should, in appearance at least, be the principal of the new note; and he suggested that Hull should appear as principal in the new note and Bowen as surety, instead of making Bowen principal and Hull surety. This suggestion met the approbation of all par-

ties, and it was so done, although this new note was always treated as Bowen's note by all parties, and in equity at least, if not at law, Bowen was in truth and fact the principal in that note, as much as if he had appeared so upon its face. Strictly and technically speaking, this was a payment of the first hundred dollars, according to the literal terms of the agreement, and justified the averment that but fifty dollars remained due, and a tender of that amount. And yet it was no doubt the duty of a court of equity, to go behind this literal performance, in order to do complete justice upon the broadest principles of equity, and protect the defendant against loss upon that note, and compel the complainant to reimburse the defendant the interest he had paid on that note, before it would give him the benefit of his literal performance. So too, the court might, under some circumstances, and perhaps a close computation in this case would show, that it did require the defendant to pay interest on the remaining fifty dollars, at least for a part of the time, although not required to do so by the literal terms of the bargain as proved. Now the complainant was not bound to anticipate in his pleadings all the discretionary equities which the court might adjudge against him. To ascertain the amount of the balance which the complainant may have to pay, in order to obtain a specific performance, may be, and often is, in the nature of taking an account, and the complainant need not at his peril state the exact balance which may ultimately be found against him. In a case where the true balance is uncertain, and can only be ascertained by the adjudication of the court, upon testimony to be taken, the pleader may state the case most favorably to himself, and then comply with the decree, if it is less favorable than was his claim. So here, the complainant might reasonably say, that but fifty dollars of the purchase money was due, and so insist in his pleadings, submitting, however, to the determination of the court, which, upon the evidence, and considering all the equities of the case, adjudges that he shall pay more than that, in order to entitle him to a specific performance of the agreement.

Although in this case, there is probably enough shown of part performance, by possession, improvement and payment, to take this case out of the statute of frauds, had that been interposed, as that has not been done, it is unnecessary to discuss that question.

We are of opinion that the decree should be affirmed.

*Decree affirmed.*